Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHLEEN BOYLE,<br><br>                    Plaintiff,<br><br>          vs.<br><br>DENBURY INC., KEVIN MEYERS,<br>ANTHONY ABATE, CAROLINE<br>ANGOORLY, JAMES CHAPMAN,<br>CHRIS KENDALL, LYNN PETERSON,<br>BRETT WIGGS, and CINDY YEILDING,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14(a) of the Securities<br>      Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities<br>      Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Kathleen Boyle ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Denbury Inc. ("Denbury" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of

the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Exxon Mobil Corporation ("Parent") through merger vehicle EMPF Corporation, ("Merger Sub" and collectively with Parent, "Exxon"), a wholly owned subsidiary of Parent, as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-stock merger transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 14, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Denbury's common stock will be converted into the right to receive 0.840 shares of Parent common stock.   The Proposed Transaction is valued at approximately $4.9 billion, or approximately $89.45 per Denbury share based on Exxon's closing price as of July 12, 2023. As a result of the Proposed Transaction, Denbury will become a wholly owned subsidiary of Parent.

3.      Thereafter, on August 29, 2023, in support of the Proposed Transaction, the Company and Exxon caused to be filed with the SEC a Form S-4 attaching the Registration Statement (the "Registration Statement").

4.      The Proposed Transaction is unfair for a number of reasons.  Notably, the Proposed Transaction does not appear to provide for a collar mechanism to keep the merger considerations value within the realm of reasonableness.

5.      The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning,

among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Denbury and Parent, provided by Denbury management to the Board and the Board's financial advisors J.P. Morgan Securities LLC ("J.P. Morgan"), TPH & Co. ("TPH"), and PJT Partners LP ("PJT Partners"); and (d) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by J.P. Morgan, TPH, and PJT Partners, if any, provided to the Company and the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## **PARTIES**

7.     Plaintiff is a citizen of Illinois and, at all times relevant hereto, has been a Denbury stockholder.

8.     Defendant Denbury operates as an independent energy company in the Gulf Coast and Rocky Mountain regions. It holds interests in various oil and natural gas properties located in Mississippi, Texas, and Louisiana in the Gulf Coast region; and in Montana, North Dakota, and Wyoming in the Rocky Mountain region.  Denbury is incorporated in Delaware and has its principal place of business at 5851 Legacy Circle, Suite 1200, Plano, Texas, 75024.  Shares of Denbury common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "DEN."

9.     Defendant Kevin Meyers ("Meyers") has been a Director of the Company at all relevant times and serves as Chairman of the Company Board.

10.     Defendant Anthony Abate ("Abate") has been a director of the Company at all relevant times.

11.     Defendant Caroline Angoorly ("Angoorly") has been a director of the Company at all relevant times.

12.     Defendant James Chapman ("Chapman") has been a director of the Company at all relevant times.

13.     Defendant Chris Kendall ("Kendall") has been a director of the Company at all relevant times and serves as the Company's President and Chief Executive Officer ("CEO").

14.     Defendant Lynn Peterson ("Peterson") has been a director of the Company at all relevant times.

15.     Defendant Brett Wiggs ("Wiggs") has been a director of the Company at all relevant times.

16.     Defendant Cindy Yeilding ("Yeilding") has been a director of the Company at all relevant times.

17.     Defendants identified in ¶¶ 9 - 16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Parent Exxon Mobile Corporation engages in the exploration and production of crude oil and natural gas in the United States and internationally.  It operates through Upstream, Energy Products, Chemical Products, and Specialty Products segments.

19.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

23.     Defendant Denbury operates as an independent energy company in the Gulf Coast and Rocky Mountain regions. It holds interests in various oil and natural gas properties located in Mississippi, Texas, and Louisiana in the Gulf Coast region; and in Montana, North Dakota, and Wyoming in the Rocky Mountain region.

24.     The Company's recent first quarter 2023 performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the report of the first quarter 2023 financial results dated May 3, 2023, the Company highlighted such milestones as: first quarter 2023 net cash flows provided by operating activities totaled $89 million, and adjusted cash flows from operations totaled $140 million; net income for the quarter was $89 million, or

$1.66 per diluted share, and adjusted net income(1)(2) was $73 million, or $1.36 per diluted share; the Company ended the first quarter with $68 million borrowed on the Company's bank credit facility and $672 million of financial liquidity (including cash on hand and borrowing capacity under the credit facility; and commissioned the first $CO_2$ recycle facility at the Cedar Creek Anticline ("CCA") Enhanced Oil Recovery ("EOR") project in March 2023.

25.     Speaking on these positive results, Defendant and CEO Chris Kendall commented on the Company's positive results as follows, "Denbury's performance in the first quarter was strong, and we achieved significant milestones in both our EOR operations and CCUS businesses. At our anchor CCA EOR project, we have progressed the installation of our initial $CO_2$ recycle facilities, and first tertiary production from this multi-decade asset is expected in the second quarter."

26.     Kendall continued, saying "Production from CCA will drive volume growth and margin expansion for our Company, while also significantly increasing the production of our carbon-negative "blue" oil, a unique commodity that we believe will be highly sought after for the production of low-carbon fuels. In our CCUS business, we expanded our dedicated $CO_2$ sequestration portfolio with a new strategic site added in southeast Texas, and we drilled our first U.S. Gulf Coast stratigraphic test well. Negotiations with industrial customers for $CO_2$ transportation and storage services continue to progress, and I look forward to announcing new agreements in the coming months. I remain convinced that Denbury is uniquely positioned to provide the most certain, most reliable, and most efficient $CO_2$ transportation and storage system in the U.S."

27.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Denbury.

28.    Despite this upward trajectory, the Individual Defendants have caused Denbury to enter into the Proposed Transaction without providing requisite information to Denbury stockholders such as Plaintiff.

***The Flawed Sales Process***

29.    As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30.

31.    Notably, the Registration Statement fails to indicate why the Board agreed to a Proposed Transaction that did not include a collar mechanism to ensure that the merger consideration remains in a range of reasonableness.

32.    The Registration Statement also fails to disclose whether a committee of disinterested directors was formed to review the Proposed Transaction and if so, the identity of the directors who sat on said committee and what powers the committee had to evaluate the transaction, including whether the committee was empowered to veto a potential transaction not in the best interests of shareholders. On the other hand, if a committee was not formed, the Registration Statement fails to adequately disclose why a committee of disinterested directors was not formed.

33.    The Registration Statement also fails to indicate adequate reasoning as to why the Board engaged three separate financial advisors during the sales process, incurring additional costs without justification.

34.     The Registration Statement also fails to adequately disclose the consideration paid to, or owed to, the three financial advisors engaged by the Company during the sales process for services rendered in relation to the sales process and Proposed Transaction.

35.     Finally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Exxon, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

36.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

37.     On July 13, 2023, Denbury and Exxon issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> SPRING, Texas – Exxon Mobil Corporation (NYSE: XOM) today announced it has entered into a definitive agreement to acquire Denbury Inc. (NYSE: DEN), an experienced developer of carbon capture, utilization and storage (CCS) solutions and enhanced oil recovery. The acquisition is an all-stock transaction valued at $4.9 billion, or $89.45 per share based on ExxonMobil's closing price on July 12, 2023. Under the terms of the agreement, Denbury shareholders will receive 0.84 shares of ExxonMobil for each Denbury share.
>
> "Acquiring Denbury reflects our determination to profitably grow our Low Carbon Solutions business by serving a range of hard-to-decarbonize industries with a comprehensive carbon capture and sequestration offering," said Darren Woods, Chairman and CEO. "The breadth of Denbury's network, when added to ExxonMobil's decades of experience and capabilities in CCS, gives us the opportunity to play an even greater role in a thoughtful energy transition, as we continue to deliver on our commitment to provide the world with the vital energy and products it needs."

The transaction synergies are expected to drive strong growth and returns for ExxonMobil. The acquisition of Denbury provides ExxonMobil with the largest owned and operated $CO_2$ pipeline network in the U.S. at 1,300 miles, including nearly 925 miles of $CO_2$ pipelines in Louisiana, Texas, and Mississippi – located within one of the largest U.S. markets for $CO_2$ emissions, as well as 10 strategically located onshore sequestration sites. A cost-efficient transportation and storage system accelerates CCS deployment for ExxonMobil and third-party customers over the next decade and underpins multiple low carbon value chains including CCS, hydrogen, ammonia, biofuels, and direct air capture.

Chris Kendall, Denbury's President and Chief Executive Officer commented, "This transaction is a compelling opportunity for Denbury to join an admired global energy leader with a low-carbon focus, a robust balance sheet and a leading shareholder return program. Over the last few years, Denbury has made significant progress executing our strategic plan, strengthening our enhanced oil recovery operations and capitalizing on our unrivaled infrastructure to accelerate the growth of our $CO_2$ transportation and storage business. To build even further on this positive momentum, the Denbury Board of Directors and management team undertook a thorough review process and considered a number of alternatives to maximize long-term value. Through this process, it became clear that the transaction with ExxonMobil is in the best interests of our company, our shareholders, and all Denbury stakeholders. Importantly, given the significant capital and years of work required to fully develop our $CO_2$ business, ExxonMobil is the ideal partner with extensive resources and capabilities. The all-equity consideration will allow Denbury shareholders to participate in the upside of ExxonMobil's stock while benefitting from its strong capital return strategy. We look forward to bringing together our highly complementary cultures and teams to realize the long-term value and benefits of this combination."

"Denbury's advantaged $CO_2$ infrastructure provides significant opportunities to expand and accelerate ExxonMobil's low-carbon leadership across our Gulf Coast value chains," said Dan Ammann, President, ExxonMobil Low Carbon Solutions. "Once fully developed and optimized, this combination of assets and capabilities has the potential to profitably reduce emissions by more than 100 million metric tons per year in one of the highest-emitting regions of the U.S."

In addition to Denbury's carbon capture and storage assets, the acquisition includes Gulf Coast and Rocky Mountain oil and natural gas operations. These operations consist of proved reserves totaling over 200 million barrels of oil equivalent, with 47,000 oil-equivalent barrels per day of current production, providing immediate operating cash flow and near-term optionality for $CO_2$ offtake and execution of the CCS business.

The boards of directors of both companies have unanimously approved the transaction, which is subject to customary regulatory reviews and approvals. It is

also subject to approval by Denbury shareholders. The transaction is expected to close in the 4th quarter of 2023.

***Potential Conflicts of Interest***

38.     The breakdown of the benefits of the deal indicates that Denbury insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Denbury.

39.     Company insiders currently own large, illiquid portions of Company stock, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.   The Registration Statement provides the following but does not account for the merger consideration each of these amounts will be exchanged for upon the consummation of the Proposed Transaction.

| Name and Address of Beneficial Owner | Number of Shares of Denbury Common Stock Beneficially Owned[1] | Percentage of Denbury Common Stock Beneficially Owned[2] |
|---|---|---|
| DIRECTORS AND NAMED EXECUTIVE OFFICERS[4]: | | |
| Kevin O. Meyers | 5,831[3] [4] [8] | * |
| Anthony M. Abate | 3,887[8] | * |
| Caroline G. Angoorly | 3,887[8] | * |
| James N. Chapman | 3,887[8] | * |
| Lynn A. Peterson | 3,887[3] [8] | * |
| Brett R. Wiggs | 3,887[8] | * |
| Cindy A. Yeilding | 3,887[8] | * |
| Christian S. Kendall | 42,723[3] [4] [5] [6] [8] | * |
| Mark C. Allen | 20,517[3] [4] [5] [6] [8] | * |
| James S. Matthews | 10,685[4] [5] [6] [8] | * |
| David E. Sheppard | 12,005[3] [4] [5] [6] [7] [8] | * |
| All current directors and executive officers as a group (11 persons) | 115,083[8] | * |
| | | |
| STOCKHOLDERS OWNING MORE THAN 5%: | | |
| The Vanguard Group[9] 100 Vanguard Blvd. Malvern, PA 19355 | 4,816,289 | 9.5% |
| FMR LLC[10] 245 Summer Street Boston, MA 02210 | 4,450,325 | 8.7% |

| | | |
|---|---|---|
| The Goldman Sachs Group, Inc. [11]<br>200 West Street<br>New York, NY 10282 | 3,878,261 | 7.6% |
| Blackrock, Inc.[12]<br>55 East 52nd Street<br>New York, NY 10055 | 3,556,803 | 7.0% |

\*    Indicates less than 1%.

40.    Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, some of which may be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Registration Statement provides the following but does not account for the merger consideration such equity awards will be exchanged for.

| Name | Vested PSUs | Vested RSUs | Unvested RSUs | Total |
|---|---|---|---|---|
| Christian S. Kendall | 362,242 | 241,210 | 124,501 | 727,953 |
| Mark C. Allen | 135,791 | 90,562 | 46,688 | 273,041 |
| James S. Matthews | 71,247 | 47,544 | 24,512 | 143,303 |
| David E. Sheppard | 67,817 | 45,280 | 23,344 | 136,441 |
| Kevin O. Meyers | — | 30,559 | 15,280 | 45,839 |
| Anthony M. Abate | — | 20,372 | 10,187 | 30,559 |
| Caroline G. Angoorly | — | 20,372 | 10,187 | 30,559 |
| James N. Chapman | — | 20,372 | 10,187 | 30,559 |
| Lynn A. Peterson | — | 20,372 | 10,187 | 30,559 |
| Brett R. Wiggs | — | 20,372 | 10,187 | 30,559 |
| Cindy A. Yeilding | — | 6,484 | 3,242 | 9,726 |
| All of the executive officers and<br>   directors as a group | 637,097 | 563,499 | 288,502 | 1,489,098 |

42.    Moreover, certain employment agreements with certain Denbury executives entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Named Executive Officer | Cash<br>($)[1] | Long-Term<br>Incentive<br>($)[2] | Perquisites/<br>Benefits<br>($)[3] | Tax<br>Reimbursement<br>($)[4] | Total ($) |
|---|---|---|---|---|---|
| Christian Kendall | 6,524,796 | 7,599,603 | 54,981 | 35,672 | 14,215,052 |
| Mark Allen | 4,853,460 | 2,938,472 | 52,354 | 33,967 | 7,878,253 |

| James Matthews | 3,780,150 | 1,739,293 | 66,143 | 42,914 | 5,628,500 |
| David Sheppard | 3,084,925 | 2,200,779 | 60,777 | 39,433 | 5,385,914 |

43.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44.     Thus, while the Proposed Transaction is not in the best interests of Denbury, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

### The Materially Misleading and/or Incomplete Registration Statement

45.     On August 29, 2023, the Denbury Board and Exxon caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, fails to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

_Omissions and/or Material Misrepresentations Concerning the Sales Process leading up
to the Proposed Transaction_

46.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.     Adequate information as to whether a committee of disinterested directors was formed to evaluate the Proposed Transaction. If so, the identity of the directors who sat on the committee and what powers the committee had. If not, the reasoning for failing to create such a committee;

b.     Adequate information as to why the Board agreed to a Proposed Transaction that did not contain a collar mechanism.

c.     Whether the confidentiality agreements entered into by the Company with Exxon differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

d.     All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Exxon, would fall away;

e.     Adequate information as to retention of three separate financial advisors for the Proposed Transaction, at great cost to the Company, which is paying PJT Partners a fee of $3 million, plus reimbursement for associated costs;

f.    Adequate information regarding the compensation owed to financial advisors J.P. Morgan and TPH; and

g.    Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Denbury and Exxon Financial Projections*

47.    The Registration Statement fails to provide material information concerning financial projections for Denbury and Exxon provided by Exxon management to the Board and J.P. Morgan, TPH, and PJT Partners and relied upon by J.P. Morgan, TPH, and PJT Partners in their analyses.

48.    Notably, the Registration Statement further reveals that, as part of its analyses, J.P. Morgan reviewed "certain internal financial analyses and forecasts prepared by the management of Denbury relating to its business (including the financial projections identified to J.P. Morgan by Denbury as the "Strip Pricing through 2027E Base Case," the "Strip Pricing through 2027E CCUS Delay Case," the "Strip Pricing through 2025E Base Case," the "Strip Pricing through 2025E CCUS Delay Case," the "Consensus Pricing through 2025E Base Case," the "Consensus Pricing through 2025E CCUS Delay Case," the "3-Year Historical Spot Price Average Base Case" and the "3-Year Historical Spot Price Average CCUS Delay Case")."

49.    Additionally, the Registration Statement reveals that as part of its analyses, TPH reviewed, "certain internal financial statements, analyses and forecasts and other internal financial information and operating data relating to the business of Denbury, in each case, prepared and approved for TPH's use by Denbury management (including the financial projections identified to

TPH by Denbury as a "Strip Pricing through 2027E Base Case," a "Strip Pricing through 2027E CCUS Delay Case," a "Strip Pricing through 2025E Base Case," a "Strip Pricing through 2025E CCUS Delay Case," a "Consensus Pricing through 2025E Base Case," a "Consensus Pricing through 2025E CCUS Delay Case," a "3-Year Historical Spot Price Average Base Case" and a "3-Year Historical Spot Price Average CCUS Delay Case")."

50.     The Registration Statement also reveals that as part of its analyses, PJT Partners also reviewed:

a.   "certain internal information concerning the business, financial condition and operations of Denbury prepared and furnished to PJT Partners by the management of Denbury"; and

b.   "certain internal financial analyses, estimates and forecasts relating to Denbury, including the financial projections identified to PJT Partners by Denbury as the "Strip Pricing through 2027E Base Case," the "Strip Pricing through 2025E Base Case," and, solely for purposes of the "Selected Comparable Company Analysis – Sum-of-the-Parts" section and the "Selected Precedent Corporate Acquisition Analysis" section discussed below, the "Consensus Pricing through 2025E Base Case," all of which projections were prepared by or at the direction of and approved for PJT Partners' use by the management of Denbury."

51.     The Registration Statement should have, but fails to provide, certain information in the projections that Denbury management provided to the Board, J.P. Morgan, TPH, and PJT Partners.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the

company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

52.     With regard to *Certain Denbury Unaudited Prospective Financial Information,* prepared by Denbury, for each of the *Base Case Forecasts: Strip Pricing through 2027E Case, Strip Pricing through 2025E Case*, *Consensus Pricing through 2025E Case*, and *3-Year Historical Spot Price Case*, the Registration Statement fails to disclose material line items, including the following:

    a.   The underlying inputs, metrics, and assumptions used to determine EBITDA, including specifically: net income (loss) before interest expense; income taxes; depreciation, depletion and amortization; asset impairments; noncash fair value losses (gains) on commodity derivative instruments; stock-based compensation and certain other non-recurring items or items whose timing or amount cannot be reasonably estimated;

    b.   The underlying inputs, metrics, and assumptions used to determine Capital Expenditures, including specifically: estimated expenditures associated with asset retirement obligations, including plugging and abandonment costs; and

    c.   The underlying inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow, including specifically: cash income taxes, the impact of share based compensation, and certain other noncash items.

53.     With regard to *Certain Denbury Unaudited Prospective Financial Information,* prepared by Denbury, for each of the *CCUS One-Year Delay Case Forecasts: Strip Pricing through 2027E Case, Strip Pricing through 2025E Case*, *Consensus Pricing through 2025E Case*, and *3-Year Historical Spot Price Case*, the Registration Statement fails to disclose material line

items, including the following:

    a.   The underlying inputs, metrics, and assumptions used to determine EBITDA, including specifically: net income (loss) before interest expense; income taxes; depreciation, depletion and amortization; asset impairments; noncash fair value losses (gains) on commodity derivative instruments; stock-based compensation and certain other non-recurring items or items whose timing or amount cannot be reasonably estimated;

    b.   The underlying inputs, metrics, and assumptions used to determine Capital Expenditures, including specifically: estimated expenditures associated with asset retirement obligations, including plugging and abandonment costs; and

    c.   The underlying inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow, including specifically: cash income taxes, the impact of share based compensation, and certain other noncash items.

54.    The Registration Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

55.    The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

56.    With regard to *Certain Denbury Unaudited Prospective Financial Information,* prepared by Denbury, as to Denbury's outstanding debt, the Registration Statement fails to disclose the inputs, metrics, and assumptions used to determine Denbury's forecasted debt by the end of 2023.

57.    The Registration Statement also fails to disclose any material projection data for Exxon, preventing Plaintiff from being fully informed as to the value of the merger consideration.

58.     Specifically, the Registration Statement's failure to disclose substantive material projection data prevents Plaintiff from being fully informed as to the nature of the Proposed Transaction and preventing her from making a fully informed decision on whether to vote in favor of the same.

59.     This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

60.     Without complete and accurate projection data for Denbury or Exxon being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of J.P, Morgan, TPH, and PJT Partners' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P. Morgan*

61.     In the Registration Statement, J.P. Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

62.     With respect to the *Sum-of-the-Parts – Selected Public Trading Multiples* analysis, the Registration Statement fails to disclose:

    a.   The specific metrics observed for each comparable company;

    b.   The inputs, metrics and assumptions used to determine the reference ranges of 3.50x – 4.50x and 1.5x – 2.75x for firm value to FYE 2023 EBITDA (for Denbury's enhanced oil recovery "EOR" business) and to estimated revenue for the fiscal year ending December 31, 2026 (for Denbury's carbon capture, use and storage "CCUS" business), respectively; and

63.    With respect to the *Sum-of-the-Parts – Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

    a.   The fully burdened unlevered free cash flows J.P. Morgan calculated that the Company's EOR and CCUS businesses are expected to generate June 30, 2023 through December 31, 2030 and the inputs, metrics, and assumptions used to determine the same;

    b.   The inputs, metrics, and assumptions used to determine the range of terminal asset values for Denbury utilized;

    c.   The inputs, metrics, and assumptions used to determine the terminal value growth rates ranging from (4.0%) to (2.0%) for Denbury's EOR business and from 4.0% to 6.0% for Denbury's CCUS business;

    d.   The inputs, metrics, and assumptions used to determine the discount rates ranging from 8.75% to 10.75% for Denbury's EOR business and 12.25% to 14.25% for Denbury's CCUS business; and

    e.   Denbury's weighted average cost of capital utilized for the EOR and CCUS businesses.

64.    With respect to the *Analyst Price Target* analysis, the Registration Statement fails to disclose:

    a.   The specific price targets utilized; and

    b.   The identity of the firms that generated the utilized price targets.

65.    The Registration Statement fails to disclose other "*Miscellaneous*" material financial analyses conducted by J.P. Morgan.

66.    The Registration Statement fails to disclose the compensation Denbury has paid and will pay to J.P. Morgan for services related to the Proposed Transaction, including a transaction fee and costs incurred by J.P. Morgan.

67.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

68.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Denbury stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

 *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by TPH*

69.    In the Registration Statement, TPH describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

70.     With respect to the *Selected Public Companies Trading Analysis*, the Registration Statement fails to disclose:

    a.  The selected multiples ranging from 3.00x to 4.00x to the estimated 2023 EBITDA of Denbury's EOR business, including the underlying inputs, metrics, and assumptions used to determine the same;;

    b.  The selected multiples ranging from 1.50x to 3.00x to the estimated 2026 revenue of Denbury's CCUS business to derive implied enterprise values for each such business, in each case based on the Strip Pricing through 2027E Base Case and the Strip Pricing through 2025E Base Case, including the underlying inputs, metrics, and assumptions used to determine the same;

    c.  The net debt of Denbury utilized;

    d.  The number of fully diluted shares of Denbury utilized; and

71.     With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

    a.  The standalone unlevered free cash flows TPH calculated that the Company is expected to generate by each of its EOR and CCUS businesses and the inputs, metrics, and assumptions used to determine the same;

    b.  The inputs, metrics, and assumptions used to determine the unlevered discount rate ranging from 9% to 11% for Denbury's EOR business;

    c.  The inputs, metrics, and assumptions used to determine the unlevered discount rate ranging from 14% to 8% for Denbury's CCUS business.

d.   The mid-year discount utilized;

e.   The weighted average cost of capital for Denbury's EOR and CCUS businesses utilized;

f.   The terminal values utilized for Denbury's EOR and CCUS businesses, and the underlying inputs, metrics, and assumptions used to determine the same, including the estimated 2030 EBITDA of Denbury's EOR and CCUS businesses, and the EV/EBITDA multiples ranging from 3.00x to 4.00x and 8.00x to 10.00x;

g.   The enterprise values of Denbury's EOR and CCUS businesses calculated;

h.   The net debt for Denbury utilized; and

i.   The number of fully diluted shares of Denbury utilized.

72.   The Registration Statement fails to disclose the compensation Denbury has paid and will pay to TPH for services related to the Proposed Transaction, including a transaction fee and costs incurred by TPH.

73.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

74.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Denbury stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by PJT*
*Partners*

75.    In the Registration Statement, PJT Partners describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

76.    With respect to the *Selected Comparable Company Analysis – Sum-of-the-Parts*, the Registration Statement fails to disclose:

a.   The specific metrics observed for each comparable company;

b.   The specific ratio of total enterprise value over estimated earnings before interest, taxes, depreciation, amortization and exploration expenses (where applicable) ("EBITDAX") for calendar year 2023 ("TEV / 2023E EBITDAX") for each comparable company utilized;

c.   The specific ratio of TEV to estimated EBITDAX for calendar year 2024 ("TEV / 2024E EBITDAX") for each comparable company utilized;

d.   For each of the Denbury Peers in the Energy Transition sector, (1) the ratio of TEV over estimated revenue for calendar year 2025 ("TEV / 2025E Revenue") and (2) the ratio of TEV over estimated earnings before interest, taxes, depreciation and amortization ("EBITDA") for calendar year 2026 ("TEV / 2026E EBITDA");

e.   The inputs, metrics, and assumptions used to determine the following multiple

reference ranges;

    i. For Denbury's EOR business, a TEV / 2023E EBITDAX multiple reference range of 3.5x to 4.0x;

    ii. For Denbury's CCUS business, a TEV / 2025E Revenue multiple reference range of 1.5x to 2.5x;

    iii. For Denbury's EOR business, a TEV / 2024E EBITDAX multiple reference range of 3.0x to 4.0x; and

    iv. For Denbury's CCUS business, a TEV / 2026E EBITDA multiple reference range of 5.0x to 9.0x.

    f. The inputs, metrics, and assumptions used to determine the implied values for Denbury's EOR and CCUS businesses included in the "Consensus Pricing through 2025E Base Case;" and

    g. The number of fully diluted shares of Denbury common stock utilized.

77. With respect to the *Selected Precedent Corporate Acquisition Analysis*, the Registration Statement fails to disclose:

    a. The closing date for the selected acquisitions analyzed;

    b. The specific metrics for each precedent corporate acquisition analyzed;

    c. The inputs, metrics, and assumptions used to determine the ratio of (a) the corresponding total transaction value and (b) the target company's estimated EBITDAX for the yet to be completed calendar year (12 months) in which the transaction was announced and at the time of announcement ("FY+1 EBITDAX") (such ratio, "TEV / FY+1 EBITDAX");

    d. The specific metrics observed for each comparable company, including

specifically TEV / 2023E EBITDA and TEV / 2024E EBITDA multiples associated with the Gathering & Processing peer group;

e.  The inputs, metrics, and assumptions used to determine a TEV / FY+1 EBITDAX multiple reference range of 7.0x to 9.0x on a standalone basis for Denbury's CCUS business;

f.  The inputs, metrics, and assumptions used to determine a TEV / FY+1 EBITDAX multiple reference range of 3.0x to 4.0x on a standalone basis for Denbury's EOR business;

g.  The estimated EBITDAX for calendar year 2023 of Denbury's EOR business;

h.  The estimated EBITDAX for calendar year 2026 of Denbury's CCUS business; and

i.  The implied values calculated for Denbury's EOR and CCUS businesses.

78.  With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

a.  The inputs, metrics, and assumptions used to determine the discount rates ranging from 11.5% to 9.5% and a perpetuity growth rate ("PGR") ranging from -4% to -2% for the sum-of-the-parts intrinsic valuation of Denbury's EOR business;

b.  The inputs, metrics, and assumptions used to determine the discount rates ranging from 15.5% to 13.5% and a PGR ranging from +3% to +5% for the sum-of-the-parts intrinsic valuation of Denbury's CCUS business;

c.  The inputs, metrics, and assumptions used to determine the discount rates ranging from 13.5% to 11.5% and a PGR ranging from +1.5% to +3.5% for

the intrinsic valuation of Denbury on a consolidated basis;

d.   The weighted average cost of capital of Denbury and each of its lines of business utilized;

e.   For the Strip Pricing Through 2027E and 2025E Base Case Analyses:

   i.   The range of implied equity values calculated for Denbury on a sum-of-the-parts and consolidated basis, and the inputs, metrics, and assumptions used to determine the same;

   ii.   The unlevered free cash flow estimates utilized for Denbury (on a consolidated basis) and for the EOR and CCUS businesses;

   iii.   The terminal and present values utilized;

   iv.   The implied enterprise values of Denbury's EOR and CCUS businesses

   v.   The net debt of Denbury utilized; and

   vi.   The number of fully diluted shares of Denbury utilized.

79.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

80.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.   Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Denbury stockholder.   As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

81.     Plaintiff repeats all previous allegations as if set forth in full herein.

82.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

83.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

84.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

85.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

86.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

87.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

88.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

89.     Plaintiff repeats all previous allegations as if set forth in full herein.

90.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and

Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

91.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

92.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Denbury's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

93.     The Individual Defendants acted as controlling persons of Denbury within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the

Individual Defendants had the power and authority to cause Denbury to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Denbury and all of its employees. As alleged above, Denbury is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 14, 2023               **BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*